1817.

BOTSFORD
v.
BURR.

[ * 405 ]

</div>

---

## BOTSFORD *against* BURR.

If *A.* purchases an estate with his money, and takes a deed in the name of *B.*, a trust results to *A.*, and such resulting trust may be proved by parol.

Parol evidence is also admissible to rebut or destroy a resulting trust.

If the person who sets up a resulting trust has, in fact, paid no part of the consideration money, he will not be allowed to show, by *parol* proof, that the purchase was made for his benefit.

If part only of the consideration is paid, the land will only be charged with the money advanced, *pro tanto*.

Any payment or advance of money *after* the purchase has been completed, will not raise a resulting trust.

A written agreement may be waived by parol.

THE bill, filed *March* the 9th, 1815, stated, that the plaintiff, on the first of *May*, 1813, applied to the defendant for the loan of 900 dollars, to which the defendant agreed, provided he was permitted to purchase in a farm of the plaintiff, bought by him of *S. Skidmore*, subject to a mortgage *given by *Skidmore* to *J. Bogardus*, and which was advertised for sale under that mortgage, as security for the payment of the loan. That the defendant accordingly purchased the farm. That the plaintiff had made an agreement to purchase of *Peter Elmendorf*, lot No. 3, lying oppo

<div style="text-align:right">

March 27th.

[ * 406 ]

</div>

1817.

BOTSFORD
v.
BURR.

site to the farm of the plaintiff, for 3,600 dollars; that the defendant consented to assume this contract, and become responsible to *Elmendorf* for the purchase money. That this lot was accordingly conveyed to the defendant, who executed a mortgage to *Elmendorf*, to secure the purchase money. That part of the purchase money, being 500 dollars, was to be paid down, to make up which sum, the plaintiff advanced to the defendant 90 dollars; that he also endorsed to the defendant a note of *Edmund Bruyn,* dated 10th of *March*, 1809, for 1,150 dollars, as security for the plaintiff's advances and responsibilities; and the amount of which note the defendant afterwards recovered. That the defendant has since sold the property for 7,000 dollars. The bill prayed for an account, and that the defendant might be decreed to pay over to him the balance, after deducting his advances, &c., and that he assign over to the plaintiff the securities taken, &c.

The defendant, in his answer, admitted that the plaintiff applied to him for a loan of about 900 dollars, to pay off the mortgage on his farm, then advertised for sale. The defendant refused to lend the money, but offered to purchase the farm, and that if the plaintiff repaid the money and interest, and the costs and charges, in one month thereafter, the defendant would reconvey to him the farm, but on no other condition whatever. That on the 20th of *May*, 1813, he purchased the property, (*the Bogardus farm,*) at auction, being the highest bidder, for 930 dollars, which he paid to the mortgagee, and received his deed. He admitted the verbal agreement between the plaintiff and *Elmendorf;* but the plaintiff being embarrassed, *Elmendorf* applied to the defendant to purchase the lot No. 3, and he *accordingly made the purchase for 3,600 dollars, with a view to secure to himself certain advantages for pine timber, and a mill-dam, &c. essential to the *Bogardus* farm, and for no other object or benefit, and without any understanding, express or implied, with the plaintiff. The deed was dated 1st of *May*, 1813, but executed the 28th of *June;* that to make up 500 dollars to be paid to *Elmendorf*, the defendant borrowed of the plaintiff 90 dollars, which was not understood to be any part of the purchase money, or to give the plaintiff any interest in the purchase, which was made solely for the defendant's benefit, and without any trust, expressed or implied, whatever. For the residue of the purchase money, he executed a mortgage to *Elmendorf*, which had been paid off. That the plaintiff was insolvent, and had committed waste on the premises; that in the fall of 1813, the plaintiff being desirous to have some part of the property, the defendant told him, if he would pay 100 dollars monthly,

[ *407 ]

314

he would convey to him some part of the *Bogardus* farm, in proportion to the money paid; but that if the plaintiff failed, the defendant would enter on the premises. That on the 30th of *December*, 1813, the plaintiff formally assigned to the defendant the note of *E. Bruyn*, as an indemnity for the waste committed, and for boards of the defendant, sold by the plaintiff, and agreed to pay 100 dollars a month, and if he failed to do so, there was to be an end of the business. The defendant recovered the amount of the note; but the plaintiff never paid a single sum according to the agreement. The assignment of the note expressed the consideration to be the amount of the note paid by the defendant to the plaintiff. That on the 31st of *January*, 1814, he contracted to sell the whole property, on both farms, for 7,000 dollars, but no conveyance had been executed; and he sold it in his own right, and for his own use, without any reference to the plaintiff, or any agreement with him.

*The material parts of the evidence are stated in the judgment of the Court.

*R. Tillotson*, for the plaintiff.

*Sudam*, contra.

THE CHANCELLOR. The bill proceeds on the assumed fact that the defendant purchased the *Bogardus* farm, and the *Elmendorf* lot, as trustee for the plaintiff, and took the deeds in his own name, by agreement between them, for his better security and indemnity, as he was obliged to advance, or become bound for, nearly the whole of the consideration money. The defendant is, therefore, called on, as trustee, to account for the proceeds of the subsequent sale of the lands, after being credited for the advances which he has been obliged to make, together with a reasonable allowance for his services as the plaintiff's agent.

But as the defendant purchased, at public auction, what is called the *Bogardus* farm, and took the deed in his own name, and paid his own money; and as he purchased, at private sale, the *Elmendorf* lot, and paid part of the purchase money, principally with his own funds, and gave his bond and mortgage for the residue; and as both these purchases were made with the knowledge and assent of the plaintiff, it will be somewhat difficult to raise a trust in favor of the plaintiff without violating the statute of frauds. The statute (sess. 10. c. 44. sec. 12, 13.) declares, " That all declarations, or creations of trusts or confidences of any lands, &c., shall be manifested and proved by some *writing* signed by the party, who is, or shall be, by law, enabled to

*1817.*

BOTSFORD
v.
BURR.

[ * 408 ]

1817.

BOTSFORD
v.
BURR.

[ * 409 ]

A resulting
trust may be
proved by *pa-
rol.*

If *A.* pur-
chases an estate
with his own
money, and
takes the deed
in the name of
*B.,* a trust re-
sults to *A.*

But if a party
who sets up a
resulting trust
has paid no
money, he can-
not show, by
*parol* proof,
that the pur-
chase was for
his benefit.

declare such trust, or else they shall be utterly void." The statute, however, excepts the case where " any conveyance shall be made of any lands, &c., by which a trust, or confidence shall arise or *result*, by implication or construction of law."

*It is well settled, that such a resulting trust may be established by parol proof. This point was fully considered in *Boyd* v. *M'Lean.* (2 *Johns. Ch. Rep.* 582.) The only real doubt or controversy, in this case, is, whether the facts make out a resulting trust under the statute. If *A.* purchases an estate with his own money, and takes the deed in the name of *B.,* a trust results to *A., because he paid the money.* The whole foundation of the trust is the payment of the money, and that must be clearly proved. (*Willis* v. *Willis,* 2 *Atk.* 71.) If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show, by parol proof, that the purchase was made for his benefit, or on his account. This would be to overturn the statute of frauds; and so it was ruled by Lord Keeper *Henley,* in the case of *Bartlett* v. *Pickersgill.* (4 *East,* 577. *note. Hughes* v. *More,* 7 *Cranch,* 176.)

The plaintiff does not pretend, in this case, to have paid any part of the consideration, for the purchase by the defendant, at auction, of the *Bogardus* farm. The defendant purchased that farm for 930 dollars, and paid the money himself, without any advance from the plaintiff. There is then no pretext for setting up a resulting trust here, and all parol proof, for that purpose, is inadmissible. The conveyance by *Bogardus,* the mortgagee, and the payment of the purchase money by the defendant, completed the contract; and no parol proof of parol declarations, inconsistent with the deed, can be received. To admit it, would be repealing the statute of frauds, and would endanger the security of real property resting on title by deed. Nor would a *subsequent* advance of money to the purchaser, after the purchase is thus complete and ended, alter the case. It might be evidence of a new loan, or be the ground of some new agreement, but it would not attach, by relation, a trust to the original purchase; for the trust arises out of the circumstance that the moneys of the real, and not of the nominal purchaser, formed, *at the *time*, the consideration of that purchase, and became converted into the land.

[ * 410 ]

The only money that the plaintiff alleges he advanced was 90 dollars, at the time of the purchase of the *Elmendorf* lot, and this, he says, was part of the 500 dollars paid by the defendant on receiving the conveyance. It is not pretended, that any further payment was made by the plaintiff at the time of the purchase, though it is alleged, that some

time afterwards, he assigned over to the defendant the note of *Edmund Bruyn*, in furtherance of the same object.

A doubt has been suggested in the books, whether a resulting trust can be sustained, where only *a part* of the consideration was paid by the party claiming to be *cestui que trust*. Lord *Hardwicke* held that it could not, according to the case of *Crop* v. *Norton*. (2 *Atk.* 74. 9 *Mod.* 233.) He there said, that where the purchase money was paid by one, and the conveyance taken in the name of another, there was a resulting trust for the person who paid the money, but that this was where " the whole purchase money" was paid by one person; and that he never knew it to be so, where the consideration moved from several persons. He, accordingly, held, that as only part of the consideration, in that case, moved from *N.*, there was no resulting trust in him. I doubt whether this case is to be understood to apply; and it cannot be received as correct, where only a single individual claims the benefit of the trust; for the cases recognize the trust where the money of *A.* formed only *a part* of the consideration of the land purchased in the name of *B.* The land, in such case, is to be charged *pro tanto*. This seems to be the language of the case of *Ryal* v. *Ryal*, (1 *Atk.* 59. *Amb.* 413.) and of *Bartlet* v. *Pickersgill*, already referred to. So, also, in *Lane* v. *Dighton*, (*Amb.* 409.) only part of the consideration of the purchase arose from trust moneys, and yet the decree followed the money into the land. This is the most reasonable *application of the rule; and, in the late case of *Wray* v. *Steele*, (2 *Ves. & Beame*, 388.) the vice chancellor held, that there might be a resulting trust by a joint advance, by two or more, upon a purchase in the name of one, and that there was no reason for confining the advance to a single individual, to constitute a resulting trust. He did not believe that Lord *Hardwicke* ever used the *dictum* imputed to him in *Crop* v. *Norton*.

If *A.* pay part only of the consideration money, and the deed is in the name of *B.*, the land will be charged with the money advanced by *A.*, *pro tanto.*

[ * 411 ]

We will now examine the proof of the payments charged to have been made by the plaintiff.

The defendant, in his answer, admits the loan of the 90 dollars, to make up the first payment of the 500 dollars to *Elmendorf*. He says, it was simply a loan, and not advanced as a payment by the plaintiff of any part of the consideration.

The plaintiff's witnesses, *Hixson* and *Couch*, say, that these 80 dollars, or 90 dollars, were advanced by the plaintiff, on account of the purchase under the *mortgage sale:* one of them says, he was present at the sale under the mortgage, and that the defendant then told him, that the plaintiff had, on that day, advanced him the 80 dollars on account of the purchase. It will be recollected, that this sale, under the mortgage of the *Bogardus* farm, was on the 12th of *May*,

and the purchase from *Elmendorf*, on the 28th of *June*, and that the plaintiff charges, and the defendant admits, that the advance of the 80 dollars, or 90 dollars, was at the latter purchase. None is pretended to have been made at the former purchase, and yet these witnesses fix, with so much precision, the advance at that time. This is a remarkable instance of the inaccuracy and fallacy of parol testimony, and shows the great danger there is of giving much latitude to these implied trusts, founded on naked declarations, in opposition to the solemnity and certainty of written documents.

Another witness (*Wm. Doll*) says, he heard the defendant acknowledge the receipt of from 80 to 100 dollars *from the plaintiff, "on account of their contracts." This is too loose and general to be of much weight. *Henry Upham* is the only witness who directly supports the allegation in the bill. He says the defendant told him, in the autumn of 1803, that " he had received 80 dollars of the plaintiff, towards purchasing the *Elmendorf* lot." Here is an inaccuracy in this witness; for both parties admit, that the sum advanced in aid of that purchase was 90 dollars: but the question still arises, Was the money advanced as a loan to the defendant, or as a payment, *pro tanto*, by the plaintiff to the vendor? The testimony which I have stated as to this point (and it is all there is) is extremely imperfect. There was, no doubt, an advance by the plaintiff of 90 dollars, at the time of the purchase of the *Elmendorf* lot, but whether it was advanced to accommodate the defendant, or as payment of so much by the plaintiff to the vendor, through the agency of the defendant, is a point not clearly ascertained. All the proof seems to consist of confessions of the defendant; yet those confessions will, most of them, apply as well to the pretence on one side as on the other. *He received* 90 *dollars of the plaintiff towards paying for the Elmendorf lot ;* but it is still uncertain whether it was considered as an advance by the plaintiff towards the purchase, on his own, or on the defendant's account. It is dangerous to trust to such inaccurate witnesses as those who testify concerning this payment. The observation of Sir *Wm. Grant*, (10 *Vesey*, 517.) is very applicable to this case, and he was speaking on a similar point. " The witness swears to no fact or circumstance capable of being investigated or contradicted, but merely to a naked declaration of the purchaser, admitting that the purchase was made with the trust money. That is, in all cases, most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. *Besides, the slightest mis-*

318

*take*, or *failure* \*of *recollection, may totally alter the effect of the declaration."*

The situation of the parties, at the time, is sufficient to throw doubt on the suggestion, that the 90 dollars were advanced by the plaintiff, as part payment of a purchase actually made on his account. He was, at the time, absolutely insolvent, and could not pay a debt of 50 dollars, which he owed to another person. He had not been able, a few weeks before that purchase, to redeem a farm, with its mills, for 930 dollars, but suffered the same to be purchased by the defendant, without any payment on his part. The *Elmendorf* lot was then purchased for 3,600 dollars, and of which sum 500 dollars were to be paid immediately. The plaintiff was utterly unable to engage in this purchase. Is it then probable that, under all these circumstances, 90 dollars would be seriously considered, by either party, as paid by the plaintiff on his own account, or that the purchase was made for his benefit?

But the plaintiff, on the 30th of *December*, 1813, which was six months after the purchase of the *Elmendorf* lot, assigned to the defendant a note against *Edmund Bruyn;* and this is put forward as a payment of part of the purchase money, from which the resulting trust was to arise.

The bill charges, that the note was endorsed to the defendant, " as a security for the advances and responsibilities entered into by the defendant for the plaintiff;" and it says, afterwards, that it was " for the purpose of procuring a reconveyance or assignment of the said farm, so bid off at public auction by the defendant, and of the lot No. 3, purchased of *Elmendorf*."

It is not easy to reconcile these distinct reasons, stated in the bill, for the assignment of the note; but if we adopt either of them as the true reason, it does not appear that the note was assigned, truly and distinctly, as a part payment, by the plaintiff, of the purchase money belonging \*to the vendor, upon either of the sales. The note affords no ground for a resulting trust springing out of the purchase of either farm by the defendant, because such a trust arises only from the payment, *originally*, of the purchase money, (or, at least, a part of it,) by the party setting up the trust. The assignment of this note was an after thought and transaction ; and, according to the latter reason mentioned in the bill, it was made for the purpose of procuring a reconveyance, a matter entirely distinct from the trust we are considering. The answer of the defendant puts the assignment of the note on other ground. It was made " as an indemnity for the waste committed on the property by the plaintiff, and for the boards belonging to the defendant, (which had been sold by the

[ * 414 ]
Payment of money after a purchase has beencompleted, will not raise a resulting trust.

plaintiff,) and in order to induce the defendant to give to the plaintiff the only opportunity he required of making some payment, so as to induce the defendant voluntarily to convey to him some part of the tract purchased under the mortgage sale."

The plaintiff's witnesses who speak of this note, give a different reason for the assignment, and one not exactly consistent with the allegations of either party. *Hixson* says, it was assigned " on account of moneys advanced by the defendant for the plaintiff, on the purchase of both the farms." It does not appear how the witness came to the knowledge of this fact ; and, considering his great inaccuracy on another point, as I have already shown, we cannot place much reliance upon the correctness of this assertion, unaccompanied with any reason or authority for making it. But assuming the fact as stated, (and we may do it with the more safety, since *Upham*, another witness, testifies to the same fact, as coming to him from the repeated acknowledgments of the defendant,) the assignment of the note, even for such a purpose, cannot raise a trust out of either of the conveyances to the defendant. The trust must have been coeval with the deeds, or it *cannot exist at all. After a party has made a purchase with his own moneys or credit, a subsequent tender, or even reimbursement, may be evidence of some other contract, or the ground for some other relief; but it cannot, by any retrospective effect, produce the trust of which we are speaking. There never was an instance of such a trust so created, and there never ought to be, for it would destroy all the certainty and security of conveyances of real estate. The resulting trust, not within the statute of frauds, and which may be shown without writing, is *when the purchase is made* with the proper moneys of the *cestui que trust*, and the deed not taken in his name. The trust results from the *original transaction*, at the time it takes place, and at no other time ; and it is founded on the *actual payment of money*, and on no other ground. It cannot be mingled or confounded with any subsequent dealings whatever. They are to be governed by different principles, and the doctrine of a resulting trust would be mischievous and dangerous, if we once departed from the simplicity of this rule. It is a very questionable doctrine, in the view of policy, even under this limitation ; and it has been admitted with great caution, as is manifest from the cases which were reviewed in *Boyd* v. *M'Lean.*

But there is an objection to the parol proof, in respect to the assignment of the note. It was assigned to the defendant by a very formal instrument under seal, and, as the instrument stated, " in consideration of the said sum of money

[ *415 ]

320

now due on said note, *and to him in hand paid by the de-fendant.*" The parties were concluded by this deed from setting up a different consideration, except upon the allegation of fraud, mistake, or surprise. (1 *Johns. Ch. Rep.* 429.) On no other ground can a deed be contradicted by parol proof. We must take the consideration to be what it is stated to be in the assignment, except so far as the defendant has admitted, in his answer, a different consideration; and that admission in this case, even if we *join with it the admission of the plaintiff, is of no use as to the charge of a resulting trust.

[ * 416 ]

We are, then, brought to this conclusion, that the defendant was not, in any respect, a trustee to the plaintiff in the purchase of the *Bogardus* farm ; and that he was not a trustee in the purchase of the *Elmendorf* lot, unless in a very small degree, or in the ratio that 90 dollars bear to 3,600. If the payment of part of the consideration raises a trust, it certainly cannot raise it beyond the proportion of the money paid. It can only be a charge, as one of the cases expresses it, *pro tanto ;* and in this case the trust, even if admitted, is to so inconsiderable an amount as not to be worth contending for. The difference between the 90 dollars, with interest, considered as a loan, and a ratable proportion of the price for which the *Elmendorf* lot was sold by the defendant, is very immaterial. But if the plaintiff is entitled to pursue that sum into the land, the smallness of the demand will not be an obstacle. The proof of the payment of the 90 dollars by the plaintiff, as a part of the purchase money, is not, however, satisfactory ; and if it was, there is evidence that the plaintiff afterwards discharged the trust. It is well set-tled that parol evidence is admissible to rebut a resulting trust. If the plaintiff, by his bill, sets up an equity founded on parol proof, it may be rebutted, put down, or discharged, by parol proof. (*Walker* v. *Walker,* 2 *Atk.* 98. *Lake* v. *Lake, Amb.* 126. *Roe* v. *Popham, Doug.* 24.) There may be a parol waiver even of a written agreement. (*Price* v. *Dyer,* 17 *Ves.* 356.) Now, in this case, it is in proof, that after the sale of the *Elmendorf* lot by the defendant, the plaintiff disclaimed any right or title to it. He declared to *Wm. Tremper,* " that the defendant had sold the land to *Hendrickson* and others, and made something by it. That the whole was the defendant's, and he had nothing to do with it. That he had failed in every one of his contracts with the defendant ; and that he had no interest in either of the said *tracts of land. That the defendant did with it as he pleased, and that he had no claim on the defendant, unless the defendant chose to give him something."

*Parol* evidence is admissible to rebut a *result*ing trust.

A *written a-greement* may be waived by parol.

[ * 417 ]

I am, accordingly, of opinion, that the plaintiff has failed

1817.

BOTSFORD
v.
BURR.

in charging the defendant as a trustee, in the purchase of either of the tracts of land mentioned in the bill. The defendant is, therefore, bound to account for the 90 dollars, with interest, and for the amount of the note assigned to him, with interest. This is what he offered to do by his answer. But he claims likewise the benefit of the consideration, for which he admits the note to have been assigned, and which was for waste committed on the lands between the time of the purchase by the defendant and the assignment of the note, and for boards of the defendant's which the plaintiff sold. It appears, also, by the testimony of two of the witnesses, (*Hexson* and *Upham*,) that after the purchase of the *Elmendorf* lot by the defendant, and before the sale by him, the plaintiff had made beneficial improvements upon it; and as it appears that the plaintiff was suffered to continue in possession, under some indistinct encouragement held out by the defendant, that he might eventually become interested in the lands, it is equitable, under all the circumstances of this case, that the plaintiff should have a reasonable allowance made him, for such beneficial and permanent improvements as he may have made on the lands, between the time of the purchase and sale of the defendant, as stated in the pleadings.

I shall, accordingly, direct a reference to a master, to take and state an account between the parties, upon the following principles, viz. That he compute the amount of the loan of 90 dollars, and of the note assigned, with interest; that he ascertain, by proof, the damages, if any, arising from waste, committed by the plaintiff, or by his direction, on any part of the lands, between the time of the purchases and the sale thereof by the defendant; also the *amount of boards belonging to the defendant upon the said lands, and sold, or otherwise converted by the plaintiff; and that he further ascertain the value of the beneficial and lasting improvements, if any, made by the plaintiff on either of the tracts of land, during the period aforesaid; also, what would be a reasonable allowance to the defendant for the use and occupation of the said lands by the plaintiff, during the same period. All further questions are reserved until the coming in of the report.