Louise Haggard, by next friend, etc., *v.* W. A. Benson and others.

## October Term, 1876.

Infant — Election of rights. — The court cannot elect, for an infant, between a right to land and the following of the purchase-money into other land, without having such a case before it as will enable it to make an intelligent and effectual election, and a next friend has no power to make an election by filing a bill in one aspect alone.

Conflicting equities on legal title. — Neither a resulting trust, nor an implied trust growing out of the relation of the parties and use of funds, will be enforced in equity against the holder of the legal title with an equal equity, even in favor of an infant; and a mortgagee for money advanced at the time may be such holder.

*E. H. East* and *Helms & Hicks*, for complainant.
*Ed. Baxter* and *J. J. Turner*, for defendants.

THE CHANCELLOR : — Bill and cross-bill; the first to set up a resulting or other trust in a tract of land of 132¾ acres in this county, and the last to foreclose a trust-mortgage on the same tract.

Prior to, and on, October 5, 1865, John R. Bain was the owner in fee of a tract of land about three miles from Nashville, on the Hillsboro Turnpike, containing 152¾ acres. On October 5, 1865, he sold and conveyed to W. D. Haggard twenty acres of this tract, for the recited consideration of $6,000 paid. On the same day, Haggard conveyed the same twenty acres in mortgage to Susan M. Douglass, to secure an indebtedness from the mortgageor to the mortgagee of $5,000, as of the date of the deed. Both of these instruments were noted for registration on the same day, and duly registered. On November 27, 1865, John R. Bain sold and conveyed to W. D. Haggard the remaining 132¾ acres, for the consideration of $26,550, secured by four notes of the said Haggard of that date, each for $6,637.50, and payable January 1, 1866, 1867, 1868, and 1869, respectively. The conveyance was in fee, retaining a lien for the payment of the notes. The deed was duly proved and registered two days thereafter. Afterwards, John R. Bain having died, Samuel C. D. Bain, as the administrator of his estate, filed his bill in this court to sell the land for unpaid purchase-money under the lien reserved; and such proceedings were had in said cause that a decree was rendered in this court, and affirmed in the Supreme Court on appeal, for the balance of unpaid purchase-money against said Haggard, and the land ordered to be sold in satisfaction thereof. On May 16, 1871, the defendant John W. Walton, at the instance of Haggard, and upon his assurance that the money was to be used in paying the vendor's lien debt, loaned to the said Haggard $11,500, taking his note for the amount at two years, with ten per cent interest, payable semi-annually, secured by a conveyance of the land by Haggard to the defendant W. A. Benson, in

trust, with power of sale on failure to pay the debt at maturity, for cash, free from the equity of redemption. The money thus borrowed was applied to the payment of the lien debt, and on May 24, 1871, Samuel C. D. Bain executed a release accordingly, which was duly registered. On November 4, 1874, the original bill in this cause was filed to enjoin the sale of the land by the trustee under the power contained in the trust-deed, on the ground that either the complainant's land or money went in part to pay John R. Bain for said land, and that a trust resulted to her to the extent of such payment. The complainant, Louise Haggard, is an infant daughter of W. D. Haggard, and the bill is filed against said Haggard, Benson, Walton, and Susan M. Douglass.

The equity of the bill rests upon the following facts: Elmore Douglass died in Sumner County, in this state, in 1863, leaving a will, by which he devised all of his property " to be equally divided" between his two daughters, Martha, the wife of W. D. Haggard, and Susan M. Douglass, " to them and the heirs of their bodies." The property thus devised, so far as is material to this suit, consisted of a house and lot in Gallatin, forty-six acres of land three miles west of Gallatin, and twenty-five acres on Red River Ridge. On August 1, 1865, W. D. Haggard filed a bill in the Chancery Court at Gallatin against Martha A. Haggard, his wife, and Susan M. Douglass, to have the foregoing property sold for partition, and because for the interest of the said Susan M., then an infant. He stated, in his bill, that he was able " to effect a trade" by which he could get $10,000 for the lot in town and the forty-six acres, and he asked for a decree empowering him "to sell said property," and for such orders as might be necessary for the investment of the proceeds of sale, " so that the interests of the defendants may be properly protected." Process was issued, returnable to the first Monday of September, 1865, and duly served upon the defendants on

August 12, 1865. On August 16th an answer, signed by counsel and sworn to by Martha A. Haggard, was filed. A guardian *ad litem* was appointed for Susan M. Douglass, who filed an answer for her. It was thereupon referred to the master, " to take proof, and report whether it would be manifestly to the interest of the defendants to sell the property, as prayed for in the bill." The master took the evidence of four witnesses, and, from their statements, reported that $10,000 would be a full and fair price for the property mentioned, and that it would be manifestly for the interest of the defendants that the property should be sold " if $5,000 can be secured to each of them." He added, without any thing in the order of reference calling for it, " that the land of J. R. Bain near Nashville is worth $300 per acre, and that if the said purchase-money should be invested in said land, it would be a safe and good investment." The court thereupon decreed that it appeared to its satisfaction that it would be manifestly to the interest of the defendants that the property should be sold, " provided that $5,000 thereof can be secured to each of said defendants." It was further " ordered and decreed " that the complainant, W. D. Haggard, " may sell said real estate,"— specifying it, — " but a lien is retained upon said property for the benefit of said defendants, to the amount of $10,000, until said W. D. Haggard settles upon his said wife, Martha A. Haggard, real estate considered by this court to be worth $5,000, and until said W. D. Haggard secures $5,000 to said Susan M. Douglass by mortgage on real estate to be considered by this court worth that amount." It was further ordered that when the settlement and mortgage were made, " they be reported to this court for confirmation, and, if satisfactory to the court, that the lien upon the property sold by said Haggard will be given up." The complainant was ordered to pay costs.

Nothing further was done in this cause until the April term, 1872, except to suggest the death of Martha A. Hag-

gard, who died on December 11, 1866. In the meantime, however, W. D. Haggard, purporting to act by authority vested in him by the above decree, had undertaken to sell and convey, on November 10, 1865, to Edward C. Bain, a son of John R. Bain, the lot in Gallatin for the recited consideration of $5,000 paid; and, on December 15, 1865, to Sallie J. Bain, a daughter of John R. Bain, the forty-six-acre tract of land, reciting a consideration of $4,000 paid. Both deeds were proved and registered in Sumner County. The parol testimony is that the first of these conveyances was made in consideration of the twenty acres in Davidson County, conveyed by John R. Bain to W. D. Haggard, and by the latter in mortgage to Susan M. Douglass; and that the latter conveyance was in consideration of a credit given to Haggard upon one of his purchase-notes for the 132¾ acres conveyed by Bain to Haggard, and by Haggard to Benson in trust as aforesaid. Haggard's evidence is, moreover, that the actual consideration for the lot in Gallatin was $5,000, and the actual consideration for the forty-six acres was $5,000, the considerations recited in the deeds to Bain's children being proportioned to suit his wishes.

On May 1, 1872, a petition was filed in the name of Louise Haggard, by G. W. Allen as her next friend, in the original suit in the Chancery Court at Gallatin, stating the previous proceedings in the cause, but not what had been done by the father, except incidentally in the following paragraph: "Her mother, the said Martha, died after the said sale was made, leaving petitioner her only child. She is advised that her father is entitled to a life-estate in the estate of her mother, and that he is willing to make a settlement on petitioner of $5,000, to take effect at his death." She asks to be made a party complainant in the case, and that, by a decree of the court, a settlement out of the estate of her father be made upon her, to take effect at his death. It was therefore referred to the master to report what settlement W. D. Haggard had made upon Susan M. Douglass, and what set-

tlement he is willing to make upon his daughter Louise Haggard. The master reported the execution of the mortgage to Susan M. Douglass, of October 5, 1865, on the twenty acres of land in this county, and that W. D. Haggard had said in his deposition that he was willing the court should settle upon his daughter, out of his estate, *at his death*, $5,000 above her distributive share in his estate. The court confirmed this report; and being of opinion that the mortgage to Susan M. Douglass was a compliance with the terms of the decree of the September term, 1865, so far as she was concerned, ordered and decreed that the lien reserved by that decree in favor of Susan M. Douglass upon the property sold by W. D. Haggard to John R. Bain be removed and discharged. The court also, reciting the agreement of W. D. Haggard that a settlement be made upon his daughter of $5,000 as per the master's report, and that he is entitled to a life-interest in the estate of his wife, undertakes to order and decree "that Louise Haggard is entitled to, and shall receive and be paid, the sum of $5,000 out of the estate, real and personal, of her father, W. D. Haggard, upon his death, over and above her distributive share in his estate. And, in consideration of this settlement, it is ordered and decreed by the court that the lien in favor of Martha A. Haggard, retained upon the property sold by W. D. Haggard to J. R. Bain, be released and discharged."

The original bill makes no mention of the proceedings thus had at the April term, 1872, of the Chancery Court at Gallatin, and recites the previous proceedings very loosely. It avers that the sale of the Douglass lot and land to Bain was made in parol before, but not consummated until after, the death of complainant's mother, and "that either her land or her money went to pay for the land" in controversy. The prayer of the bill is that a resulting trust be decreed to complainant in said land, and that the sale under the deed of trust be in the meantime enjoined.

It will serve to explain the original application to the Chancery Court at Gallatin that W. D. Haggard had, by contract in writing, on June 9, 1865, agreed with Edward C. Bain to sell him the lot in Gallatin for the twenty acres of the John R. Bain tract of land in this county, afterwards conveyed to him by John R. Bain; or, if Edward C. Bain could not make title to the twenty acres in twelve months, for the price of $5,000. That he had also agreed to sell to Edward C. Bain three particular parcels of land belonging to himself, and the forty-six acres and twenty-five acres of land belonging to the estate of Elmore Douglass, in consideration of a conveyance to him of thirty acres of John R. Bain's lands in this county, including the improvements, and adjoining the twenty acres previously bargained for; or, if Edward C. Bain was unable to make title to the thirty acres within twelve months, then for $10,000. The first part of this scheme was, in effect, realized by the conveyance of October 5, 1865. The residue of the plan was abandoned when Haggard undertook to buy 132¾ acres, being the remainder of the John R. Bain tract in this county. When he filed his bill to sell the land of his wife and his wife's sister, he doubtless intended to secure the share of the latter by mortgage on the twenty acres, as he afterwards did, and to settle a part, if not the whole, of the thirty acres on his wife. The change of plan and subsequent depression in realty have been the cause of all his woes.

The bill at Gallatin was filed to sell the Douglass lands for partition, and because manifestly for the interest of the infant. The proceedings were curiously irregular in the form of the cause, the pleadings, and in every subsequent step taken. The court had, however, jurisdiction both of the persons of the parties interested and of the property sought to be sold; and, in view of the plenary jurisdiction of the Chancery Court in matters of partition (*Manaton* v. *Squire*, 2 Freem. 27), and of the saving provisions of

section 3337 of the Code, touching proceedings for the sale of the property of persons under disability, the original decree authorizing a sale probably cannot be, and certainly has not been, seriously questioned. That decree appointed Haggard special commissioner to sell the lands of the defendants, but retained a lien upon those lands, for the benefit of the defendants, to the amount of $10,000, until Haggard made a settlement upon his wife and a mortgage to the infant of real estate to the value, respectively, of $5,000, to be judged of by the court, for which purpose the settlement and mortgage were required to be reported to the court for confirmation. The decree does not in terms require the sale to be reported, but it is the settled law of this state that a sale of land by the master is not complete until it is confirmed by the court. *Armstrong* v. *McClure*, 4 Heisk. 80 ; *Wood* v. *Morgan*, 4 Humph. 372. And a sale of the realty of an infant or married woman does not work a conversion into personalty until confirmation. *Moore, ex parte*, 3 Head, 171. The sale, it is true, may be good, but the proceeds would descend as realty. A sale by a special commissioner must stand upon the same footing as a sale by the master. The title to the land sold had not been divested out of Haggard's wife at her death, on December 11, 1866 ; nor, if a valid sale had then been made, had the defendants lost their lien on the land for the $10,000 value fixed by the decree. On the wife's death, the interest of the wife descended as realty to her daughter, subject to an estate in the father for life as tenant by the courtesy. If, now, the sales made were confirmed by the decree of the April term, 1872, and the lien retained legally discharged, the complainant's case necessarily fails. If, on the other hand, the sales were not legally confirmed, nor the lien validly discharged, the title of the daughter to the land sold has never been divested, nor her lien released ; and, in this view, the complainant cannot be required to elect, nor can this court be required to elect for her, to follow the purchase-

money instead of the original land and lien, without having such a case before it as would enable it to make an intelligent and effectual election. A next friend has no power to make such an election for an infant, and if he undertakes to do so by filing a bill in one aspect alone, he does so at his peril. *Chipman* v. *Montgomery*, 63 N. Y. 235.

Whether the proceedings at the April term, 1872, are valid, admits of grave doubt. The settlement upon the present complainant, which was satisfactory to the court at the time, seems to us, in the light of subsequent events, to have been singularly improvident. But the fact that the settlement seems now improvident, or was so in reality, would not render the proceedings invalid if the court had acquired jurisdiction of the infant's person, having already jurisdiction of the property in controversy. Undoubtedly, it was error to deprive an infant of the title to realty in possession, or of a lien upon realty for its full value, for the prospective advantage of an increased distributive interest out of an uncertain estate. The remedy may be by writ of error, bill of review, or original bill for fraud. But if the proceedings are void, there never has been any valid sale of the infant's property or discharge of her lien, and the remedy is, in that cause, by a bill to execute the decree of the September term, 1865. And even if she has the right of election between the execution of that decree and the following of the purchase-money into the property in controversy in this case, she cannot be forced to make the election until she comes of age ; nor can the court be required to make it for her, without having before it the means of acting intelligently and effectually. A next friend cannot elect for the infant, and if he undertakes to do so by filing a bill, in a proper case for election, only in one aspect, he does so at his peril.

I am clearly of opinion that the case presented by this bill, if it be conceded that the complainant has the right to follow the value of her land into the land in controversy, is

a case of election between rights; that the next friend has no power to make an election for the infant; and that he has failed to bring the necessary parties before the court, and to give it jurisdiction over the necessary property, to enable it to act intelligently and for the best interest of the infant in making an election. An election to follow the purchase-money would be an affirmance of the sale, and the court cannot know that it would be to the advantage of the infant to do this. It is obvious, moreover, that a proper case for election can only be made by a bill in the court in which the original proceedings were had, and, consequently, that the defect cannot be remedied by amendment. If the case rested upon the original bill, I should dismiss it, with costs against the next friend, but without prejudice to the infant.

The cross-bill, however, seeks to have the equities between the original complainant and the beneficiary under the trust-deed settled, with a view to the sale of the land. If to do this required the court to make an election for the infant, the cross-bill would to that extent, and for the same reason, the want of necessary parties, be dismissed also. But even if the court might elect to follow the infant's money into the land, it would still be a question whether the infant has any redress as against the mortgagee, or must look only to the surplus proceeds of sale after satisfying the mortgage-debt. To this extent the rights of the parties may well be finally determined in this case.

Conceding, therefore, that the proceeds of a tract of land in which the infant had an undivided moiety have been used in paying for the 132¾ acres in controversy, and that she thereby acquired the right to follow those proceeds, to the extent of her interest, into the lands in the hands of W. D. Haggard, has she any such right as against John W. Walton? Having had only title to an undivided half of the land, she has, of course, no claim except to one-half of the proceeds. The father having a life-estate in this half, the

infant could at most demand a declaration of her right, to take effect on her father's death, and then only by electing to affirm his acts. But her right as against Walton is rested upon a resulting trust, arising by implication of law from the use of her money in the purchase. The deed of John R. Bain to W. D. Haggard for the tract of 132¾ acres shows on its face that it was executed on November 27, 1865, for the consideration of $26,550, evidenced by the four notes of W. D. Haggard, on time, for $6,637.50 each. The deed for the forty-six acres of land in Sumner County, the consideration for which is sought to be followed, bears date December 15, 1865, and W. D. Haggard himself proves that Bain agreed to give him credit on his note for the amount. But it is an elementary principle that a resulting trust can only arise at the instant the deed is taken and the legal title vests. No subsequent payments will create it. *Gee* v. *Gee*, 2 Sneed, 395; *Botsford* v. *Burr*, 2 Johns. Ch. 414; *Rogers* v. *Murray*, 3 Paige, 390; *Wells* v. *Stratton*, 1 Tenn. Ch. 328. To raise a resulting trust, moreover, the title of the whole, or of some aliquot part, of the property must vest with the deed; and therefore a contribution of a sum of money generally will not suffice. *Crop* v. *Norton*, 2 Atk. 74; *White* v. *Carpenter*, 2 Paige, 240. The complainant must, consequently, fall back upon an implied trust, growing out of the relation of her father to her and the fund. But the payment was made before confirmation of the sale, and, therefore, in the money of the purchaser. And it was in the lifetime of the complainant's mother, and the trust is not to the land, but to follow the money into the land; and the right of action went, perhaps, to the personal representative, not the heir. And, at any rate, it is a trust only recognizable in a court of equity, and which the court will never enforce against a holder of the legal title with an equal equity. *Purefoy* v. *Jones*, 2 Freem. 44. The proof shows that Walton moved to this state from Alabama in 1869; that he knew nothing

of the title to the property, except what was shown by the register's books of this county; that he loaned the money secured by the trust-deed, at the instance of Haggard, for the express purpose of paying off the debt due to Bain, the vendor, which was a lien on the land; and that the money was so applied. The trust-deed was made, not to secure a preëxisting debt, but money actually advanced at the time, and in consideration for the deed. The transaction was, by all the authorities, *pro tanto* a sale. *Knowles* v. *Masterson*, 3 Humph. 619; *Turbeville* v. *Gibson*, 5 Heisk. 580; *Mills* v. *Banks*, 3 P. W. 9; *Bell* v. *Harris*, 4 Myl. & Cr. 267; *Williams* v. *Woodard*, 2 Wend. 487; *Myers* v. *Ross*, 3 Head, 59. Walton was a *bonâ fide* purchaser for value, and without the slightest notice of the equity in question. As between him and the original complainant, his is the superior right. *Jerrard* v. *Saunders*, 2 Ves. jr. 457; *Wallwyn* v. *Lee*, 9 Ves. 24; *Turner* v. *Petigrew*, 6 Humph. 438.

The decree will so declare; and a decree will be rendered against W. D. Haggard for the mortgage-debt still due and unpaid, and the 132¾ acres will be sold in satisfaction thereof, for cash, free from the equity of redemption, or upon time, at the option of Walton. If the proceeds of sale exceed the debt, the whole costs of the bill and cross-bill will be paid out of the excess, and the surplus held subject to the further orders of the court. If they fall short of the debt, the next friend and his surety will be charged with one-half the costs, and the other half will be paid out of the proceeds of the sale. The original bill will be dismissed without prejudice to the complainant's rights, except as settled by the decree. The defendant W. D. Haggard, having admitted his daughter's equity as against him, any surplus proceeds of sale, after satisfying Walton's debt and costs, will be held subject to such further orders as the court may make.