## MILLER v. SAXTON.

Resulting Trust—Evidence—Limitation of Actions—Laches.—A. sold a tract of land to B., giving him bond for title; B., with consent of A., sold to C., assigning the bond to him; C. paid a part of the purchase money, and afterward agreed with D. that if he would pay the balance, they would divide the land in proportion to what each paid. C. moved away, putting D. in possession; D. paid balance of purchase money, took deed to whole tract in his own name, and afterwards conveyed to his wife, who knew all the facts, both deeds were recorded; sixteen years after deed to wife, action is brought against her by heirs of C. *Held:*

1. That there was a resulting trust in favor of the heirs of C.
2. That payment of the purchase money could be proven by parol.
3. That the statute of limitations does not apply, because D. and his grantee recognized the rights of the heirs of C.
4. That the claim is not barred by laches, because there had been no settlement between C. and D.

Before W. C. Benet, special Judge, Spartanburg, July, 1904. Affirmed.

Action by Mintie Miller *et al.* against Jane Saxton. From Circuit decree, defendant appeals.

*Mr. Ralph K. Carson,* for appellant, cites: *If definite proportion paid by each cannot be ascertained, no resulting trust arises:* 2 Wash., sec. 1426; 6 S. C., 90; 17 Wall., 44; 4 DeSaus., 516; 19 S. C., 126. *Plaintiffs are estopped by laches:* 94 U. S., 806; 17 Wall., 78; Merwin's Eq., sec. 908; Hill on Trustees, 265; 21 S. C., 112; McM. Eq., 126; 3 Rich. Eq., 465; Bus. Lim. and Adv. Pos., sec. 345; Rice Eq., 373; 43 S. C., 441; 62 S. C., 73. *Resulting trust is barred by 20 years' possession raising presumption of grant:* 2 Hill Ch., 513; 1 Hill Ch., 378; Cheves Eq., 58; 48 S. C., 28, 472; 50 S. C., 161. *Resulting trusts are within the 10 year statute:* 3 Rich., 445; 2 Rich. Eq., 295; 1 McC. Ch., 176; 2 Bail. Eq., 195; 6 S. C., 105; 15 S. C., 164; 34 S. C., 291; Bus. Lim., 345; 8 L. R. A., 650, n.; 2 McC. Ch., 313;

2 Wash. R. P., 6 ed., secs. 1449-50; 10 Pet., 177; 1 Pom.
Eq., sec. 48. *Notice of record of deed:* 9 Rich. Eq., 436;
70 Fed. R., 542; 47 Fed. R., 787; 28 F. R., 278; 51 F. R.,
496; 158 U. S., 172.

*Messrs. Nichols & Jones,* contra, cite: *Facts create a re-
sulting trust binding on Saxton:* 10 Ency., 15; Bail. Eq.,
501; 32 S. C., 590; 19 S. C., 482; 26 S. C., 231; 38 S. C.,
410; 34 S. C., 504; 52 S. C., 479. *And on his wife taking
land with knowledge of the facts:* 2 McC. Ch., 149; 1 McC.
Ch., 389; Rice Eq., 132; 21 S. C., 480; 24 S. C., 592. *Wife
took under an express trust:* 2 Rich. Eq., 259; 1 McC. Ch.,
130; 34 S. C., 291; 35 S. C., 429. *No adverse holding:* 1
Ency., 228; 25 S. C., 524; 36 S. C., 329. *Laches do not
apply where right claimed is acknowledged:* 7 Rich. Eq.,
430.

September 25, 1906. The opinion of the Court was de-
livered by

MR. CHIEF JUSTICE POPE. The plaintiffs by their com-
plaint allege that W. T. West contracted to buy from Dr. J.
P. Miller at the price of $500, fifty-one acres of land in
Spartanburg County. A bond for title was made by Dr.
Miller to the said W. T. West for said tract of land. The
said W. T. West assigned the said bond for title to one Wylie
Miller, with the knowledge and consent of said J. P. Miller,
the title to be made to him upon the payment of said $500.
That under said bond for title said Wylie Miller went into
possession of said land, improved the same and paid in cash
thereon the sum of $300. The said Wylie Miller, being
unable to pay for said land alone, entered into a contract
with Allen Saxton, that if he would pay the remaining $200
of the purchase money, he should be entitled to receive a part
of the land in proportion to what each had paid thereon.
That the said Allen Saxton paid the said balance on the land
and took title from J. P. Miller to the whole tract in his own
name, on December 4th, 1877, which was recorded on the

20th December, 1877, for the consideration of $250, as recited in the deed. That on the 13th September, 1883, the said Allen Saxton conveyed to his wife, Jane Saxton, said lands, she having full knowledge of the above facts, for the sum of $1, and she has been in possession of the same, enjoying the rents and profits therefrom from the date of the said deed to her. That said rents and profits are worth the sum of $75 per year. That the share of the said land belonging to the plaintiffs is three-fifths thereof, and the share belonging to the defendant is two-fifths thereof. That Wylie Miller died intestate on the        day of        18  , leaving as his heirs at law the following persons: Mintie Miller, his widow, Mary Miller, Leverett Miller, Flemmons Miller, Hattie Miller and Maggie Miller, his children. That the said Mintie Miller and the children (as above) bring suit as plaintiffs to recover their interest in the said tract of land, and the children being under the age of twenty-one years appear herein by their mother, Mintie Miller, as their guardian *ad litem,* by an order passed by the probate court of Spartanburg County on the 12th of January, 1899. That the plaintiffs ask judgment that a trust be declared in the said lands in their favor to the extent of three-fifths thereof, and that the land be partitioned by a sale of the premises. That the defendant be required to account for the rents and profits from said land, and that the proceeds arising from such sale and the said rents and profits be divided between the parties hereto in proportion to their interests as above set out, and for such other and further relief as may be just and equitable.

The defendant denies all the allegations of the plaintiff's complaint, but admits that her husband, Allen Saxton, conveyed the premises to her by deed on the 13th of September, 1883, and that her deed was duly spread upon the record of the county of Spartanburg on September 13th, 1883, for a consideration of $1. The defendant further alleges that neither the plaintiffs nor their ancestors, predecessors or grantors, were seized or possessed of premises described in

the complaint, or any part thereof, within twenty years be-
fore the commencement of this action, which was begun on
the 30th January, 1899, but that the defendant, her ances-
tors, predecessors and grantors, have held and possessed said
premises adversely to the pretended title of the plaintiff for
twenty years past, before the commencement of this action,
under a claim of title in fee exclusive of any other right.
That the defendant has been in actual, open and notorious
possession of the premises, holding the same adversely to the
pretended title of the plaintiffs and all other persons, for more
than ten years before the commencement of a title in fee,
exclusive of any other right.   That if the said Wylie Miller
or those claiming under him ever had any interest in the
premises, they are barred by his laches from asserting any
claim of the title thereto.   The defendant prays judgment
that the complaint be dismissed with costs, and for such other
relief as may be just.

By an order of his Honor, Judge Ernest Gary, dated May
8th, 1899, the above cause was referred to the master of
Spartanburg County to take testimony and report the find-
ings of fact and the conclusions of law.   From the testimony
taken by said master, it appears that Jane Saxton, the de-
fendant, says that she knew that Wylie Miller had a part
interest in this land, but did not know what interest that was;
that she had never paid any one rent for said land; that she
had not heard of Wylie Miller for several years, and that he
had not lived there, but left the same year she and her hus-
band moved on said land.   She admits that when Wylie's
wife told the witness that she and her children had a half
interest in the land, she never denied it.   E. L. Miller stated
that he was a son of Dr. J. P. Miller and knew this land, and
that it belonged to his father, and that his father gave Mr.
West a bond for title to it, but does not know where it is, and
has searched for it.   That he was present when the land was
surveyed, but the surveyor is now dead; his recollection is
that Mr. West went into the immediate possession after the
execution of the bond for title.   That his father made a deed

of it to Allen Saxton, and when the title was executed, Wylie Miller was not in this part of the country. He thought this land would be worth $2 an acre standing rent a year.

T. D. Jarrett says he was present and saw Wylie Miller pay to Mr. West $200, on this land in dispute, and Mr. West called his attention to the payment. He thinks it was in 1874 or 1875.

W. T. West said that he bought this land from Dr. J. P. Miller, who gave him a bond for the title. He paid him $200 on it at one time; that he paid him $285 at one time, which notes were introduced in testimony. Witness is not now in possession of the bond and can't be positive of what he did with it, but his recollection is that he transferred it to Wylie Miller, to whom he sold the land. He was to give him $500 for it. That he paid him $270 of that amount. He gave him $200 in the fall after they had traded in the spring of '73 or '74. He took that money and paid two of the notes he had given to Dr. Miller for the land, a week at least after he had received the money from Wylie Miller. The witness does not remember seeing Wylie working the place but one time and he was then chopping.

Allen Saxton told witness about midnight after Wylie had got into a scrape, that Wylie had arranged with him for Allen to finish paying for the land, if witness would accept the money from Allen. They were to divide the land. Witness agreed to that arrangement, and said he did not care who paid him his money so he got it. Witness feels sure that at least $130 to $150 of the money he paid to Dr. Miller was the money he got from Wylie Miller. On the cross-examination, witness said of his own knowledge he did not know who paid to Dr. Miller the balance of the money. Allen Saxton and another paid him something like $200 after that on this place. The $30 that was paid to him by Tanner, the witness credited on the paper given him by Wylie Miller. The defendant asked him how much money Allen had paid, and witness told her that it was less than

$200; she told the witness that the agreement was that when it was paid for they were to divide it in half.

Isaac Shaver said that Wylie got into a difficulty the fall he rented the land to Saxton, and Wylie told Allen that he would pay half the money, and if Allen paid half he was to get half, and whichever paid most money was to get most land.

Mintie Miller testified that Wylie first rented the land to Allen; she heard the conversation; she heard them agree that Allen was to finish paying for the land, and they were to divide according to what each paid and the division was to be after it was paid for. This agreement was shortly before Wylie left the country, which agreement was made while Jane Saxton was present. Witness heard Allen, after Wylie came back, tell Wylie that he had not finished paying for the place. Jane Saxton was present. Allen at that time said he would divide it as the contract required. Wylie was absent from the country four or five years. He had spells and did not work much; he did not attend to any business for twenty years; he died in Pickens, S. C.

Jane Saxton told the witness that they would carry out the agreement that Wylie and Allen had made as if they were both alive. This she subsequently declined to do.

Other testimony was given of not very material consequence.

After hearing the testimony, the master filed his report on the 26th of June, 1903, in which he held that the doctrine of resulting trust is applicable where two or more persons pay the purchase money jointly, but the purchase is taken in the name of one of them. The shares being apportioned by the money advanced by each. This being a trust resulting by operation of law, parol testimony is admissible to prove by whom the payments were actually made, and such evidence was admitted in this case. The master holds that in his judgment the evidence of the part payment by Wylie Miller is clear, full and satisfactory, and he is bound to conclude that when Allen Saxton entered upon the land under the

deed from Dr. Miller, he, Allen, held it subject to a resulting trust in favor of Wylie Miller in proportion to what Miller had paid. That Jane Saxton knew of the circumstances under which the land was conveyed to her husband, and that she took a conveyance from him with full knowledge of the resulting trust in favor of Wylie Miller. He also found from the testimony that Jane Saxton did so hold the property and that she recognized the rights of Wylie Miller therein, and after his death those of his wife and children. That Wylie Miller paid part of the purchase price of the land and that a resulting trust in his favor was thereby obtained, and that the same has not been destroyed. He also held that the contention of the defendant as to laches and adverse possession could not be sustained. He held that the testimony as to the accounting for rents and profits is not as clear as he would wish, but after a careful consideration he had reached the conclusion that the plaintiffs and defendant owned the land in equal parts, the plaintiffs one-half and the defendant the other half. He was unable to arrive at any satisfactory conclusion of the rents and profits owing to the fact that he does not know how much of the land has been in continuous cultivation, how much has been cleared, to what extent the premises have been improved by the defendant, nor what amount has been paid for taxes. He, therefore, recommended that the land be sold for partition, and that the proceeds of the sale be divided so that one-half shall go to the plaintiffs and the other half to the defendant.

Both parties excepted to this report. The whole case came on to be tried before Judge Benet on July 1st, 1904, who ordered and decreed that the report of the master be confirmed and made the judgment of the Circuit Court.

From this decree the defendant excepted upon twelve grounds of appeal, which we will consider in their order.

"I. In finding as a matter of fact that the proof was clear and convincing that a part of the consideration for the conveyance of the land to Allen Saxton by J. P. Miller was money paid by Wylie Miller." It seems to us that the deed

from Dr. Miller to Allen Saxton itself furnishes some testimony that Allen Saxton only paid one-half the purchase money. The testimony in the case shows that Dr. Miller specifically states that Allen Saxton paid $250 as a consideration for the deed for the whole tract of land. Every witness who spoke on this subject testified that $500 was the purchase price of the fifty-one acres of land. Mr. West, who first purchased the land, states that $500 was the purchase price, and that such amount was entered in the bond for titles. It is well for all parties here contesting that although they are now unable to produce the bond for title, the same having been lost or mislaid, yet it was in writing, signed by Dr. Miller to Mr. West and by Mr. West assigned to Wylie Miller. It would have been much easier to solve this question had the paper not been lost or mislaid, yet when testimony is admitted without objection establishing the existence of such paper, it relieves much of our perplexity.

The witness, Mr. W. T. West, is direct and explicit on these points. J. P. Miller could only legally by his deed convey this land to Allen Saxton upon proof that Wylie Miller had paid a large part of the purchase money. The deed should have been made to Allen Saxton, because Dr. Miller had received the whole purchase money, and as he knew under an arrangement with Mr. West, Wylie Miller and Allen Saxton. This ground of appeal must be overruled.

"II. In finding that the defendant recognized the rights of Wylie Miller and those of his wife and children to an interest in the property." We do not think that the Circuit Judge erred, as is herein suggested, for Allen Saxton always admitted when questioned by competent witnesses that he and Wylie Miller were acting together for the purchase of this land. The only time that he failed to answer up to the full requirements of manhood was when he by a deed of conveyance transferred this land to his wife in fee simple. This was done, however, in 1883. This exception must be overruled.

"III. In holding and ruling that if it was shown that any part of the purchase money of the land was paid by Wylie Miller, that the burden would then be upon Allen Saxton to show by sufficient evidence that there was no resulting trust." The language of this exception does not correctly set forth the finding by the master. This is the language of his report: "If it has been shown that the purchase money was paid in part by Wylie Miller, then the burden would be upon Allen Saxton to show, by sufficient evidence, that it was intended that he should take the land absolutely himself, and not by way of resulting trust for Wylie Miller. This being a trust resulting by operation of law, parol evidence is admissible to prove by whom the payments were actually made, and such evidence was admitted in this case."

In the leading case of *Bothsford* v. *Burr,* 2 Johns. Ch., 408, Chancellor Kent says: "If A. purchases an estate with his own money and takes the deed in the name of B., a trust results for A., because he paid the money. The whole foundation of the trust is the payment of the money. *Willis* v. *Willis,* 2 Atk., 71. If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show by parol proof that the purchase was made for his benefit or on his account." This is illustrated by our case of *Ex parte Trenholm,* 19 S. C., 134, which holds, amongst other things, that a subsequent advance of money to the purchaser after the purchase is complete and ended, cannot support the case of a resulting trust. The payment must be clearly proved. *Willis* v. *Willis, supra.* To the same point, in *Boyd* v. *McLean,* 1st Johns. Ch., 590, it is held that the payment by the *cestui que trust* must be clearly proved. To the same effect is 4th Kent, 305. In *Olcott* v. *Bynum,* 17 Wall, 59, it is held that such a trust, if at all, must arise at the time the purchase is made. In our own case of *Taylor* v. *Mayrant,* 4 DeSaus., 516, a resulting trust does not arise by construction; it must be grounded on plain proof of the application of the fund of the party for whom it is raised. All the payments here made in the proof offered by Mintie

Miller were made prior to Allen Saxton's connection with the case and before a deed was made by Miller to the said Saxton. There is no effort here to prove a constructive trust. The intention of all the parties, to wit: Dr. Miller, W. T. West, Wylie Miller and Allen Saxton, was the purchase of the fifty-one acres of land from Dr. Miller. Allen Saxton only paid $250 of said sum of $500. Wylie Miller, by the proofs, certainly paid $270 of the purchase money. We hold, therefore, that there was no error in the Circuit Judge, as here complained.

"IV. In holding that when Allen Saxton took the deed from J. P. Miller, he took the title subject to a resulting trust in favor of Wylie Miller." There was no error in the Circuit Judge as there pointed out, for reasons just given in disposing of the third exception.

"V. In holding that Jane Saxton knew of the resulting trust in favor of Wylie Miller and took the land subject to the trust." It was in direct proof that Jane Saxton, the defendant, knew the circumstances under which her husband, Allen Saxton, received this land. There was no error in the Circuit Judge, as here complained of.

"VI. In holding that the statute of limitations did not apply to a resulting trust." So far as the alleged error of the Circuit Judge, when he held that the statute of limitations did not apply to a resulting trust is concerned, we hold that the plaintiff had made admissions which bind her in the deed she received from Allen Saxton to hold the same for the benefit of the plaintiffs. No holding by the defendant was ever made, so far as the proofs were concerned, adverse to the plaintiffs until about two years before this suit was begun. At all other times Allen Saxton in his lifetime and the defendant, Jane Saxton, since his deed to her in 1883, have admitted that the land was holden by them not adversely to the plaintiffs but virtually as in trust for them. There must be an adverse holding by a trustee to set the statute of limitation in operation. We, therefore, overrule this exception.

"VIII. In not holding that when the deed from J. P. Miller to Allen Saxton was recorded, it was evidence of adverse holding, and that the statute ran against Wylie Miller and his heirs at law from that date." We take it that the Circuit Judge held as demanded in this exception because the proofs were required and were furnished that Wylie Miller, in his lifetime, and since his death his widow and children have assumed the burden of proof of the title and have established their title by the preponderance of evidence. This exception is overruled.

"IX. In not holding that this defendant had been in open, notorious and adverse possession of the land in dispute for more than ten years, and that the rights of the plaintiffs, and those under whom they claim, had not accrued within ten years prior to the commencement of this action." We cannot hold that the Circuit Judge should have held that the defendant has been in the open, notorious and adverse possession of the land in dispute for more than ten years, and that the rights of the plaintiffs and those under whom they claim had not accrued within ten years prior to this suit, for such was not the case, according to the proofs adduced. This exception is overruled.

"X. In not holding that, if Wylie Miller and those claiming under him ever had any interest in the land, that their claim is stale, and they are now debarred by their laches from asserting the same." There has been unusual delay in the assertion of the rights of the plaintiffs. If there had been the slightest effort by the defendant to establish any settlement between Allen Saxton and Wylie Miller, by which settlement all claims by Wylie Miller upon Allen Saxton for his interest in the lands had been settled, a difficulty would have been presented and the staleness might have been relied upon, but such is not true in the case before us. We, therefore, overrule this exception.

"XI. In not finding that the defendant was the owner in fee of the premises in dispute, and that the complaint should be dismissed." In view of our previous holdings of law and

fact in this case, it was no error to refuse to find that the defendant was the owner in fee of the premises in dispute. The master and the Circuit Judge have passed upon all questions of fact. They have held adversely to the defendant. We will not now interfere.

"XII. In not holding that the defendant and those under whom she claimed had been in open, notorious and adverse possession of the land under a deed, duly recorded, for more than twenty years prior to the commencement of this action.

"Because his Honor, the Circuit Judge, erred:

"Second. In not ruling and holding that a resulting trust could only be shown by evidence that was full, clear and convincing; and in not finding that the evidence in this case was vague, indefinite and doubtful.

"Third. In not holding that in order to establish a resulting trust in favor of the plaintiff, it must be shown by clear and convincing proof that a part of the purchase money was actually paid by Wylie Miller to J. P. Miller.

"Fourth. In not finding that there was no testimony to show that Allen Saxton paid for the land in controversy with the money of Wylie Miller, or that Wylie Miller ever paid any money to J. P. Miller.

"Fifth. In not finding that the plaintiffs' claim was stale and barred by laches.

"Sixth. In not finding that if a trust resulted in favor of Wylie Miller, when the deed to Allen Saxton was executed by J. P. Miller, that the statute of limitations began to run from that date.

"Seventh. In not finding that even if Allen Saxton held the land, or any part thereof, as trustee for Wylie Miller, that the conveyance of the land to Jane Saxton was a disclaimer of the trust, and notice of adverse holding by Jane Saxton, the defendant, and that the statute of limitations ran from that date.

"Eighth. In not finding that the defendant was the owner in fee of the premises in dispute and dismissing the complaint."

For the reasons advanced in disposing of these points referring to the master's report, we overrule all these eight grounds of objection.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.