RICHARDSON v. DAY.

1. Findings of fact by the Circuit judge on written testimony reported to him, approved.
2. Where an intestate's wards, who were also her heirs-at-law, asserted a liability against a surety on the guardianship bond and accepted a settlement from such surety—in action afterwards brought by the surety to subject the lands of the deceased guardian to the repayment of the amounts so paid by him, these wards and heirs-at-law are estopped from objecting that the surety was not liable until after an accounting by the guardian.
3. Where money of wards is used in paying for land previously acquired by the guardian, there is no resulting trust in favor of the wards.
4. Nevertheless, wards may claim the ownership of property paid for by their guardian, out of their estate, if they so elect, but having received money in settlement of the debt due by their guardian, they cannot afterwards claim the land also.
5. Tenants in common cannot say that they are not in possession of the land in controversy, and, therefore, demand a dismissal of the complaint as to them, if their co-tenants are in possession.

---

Before WALLACE, J., Abbeville, February, 1883.

Hon. J. B. Kershaw, Circuit judge, sat in the place of Mr. Justice McGowan, who had been of counsel in the cause.

This action was commenced April 18th, 1881. The Circuit decree, omitting so much as is repeated in the opinion of this court, was as follows :

This cause was heard before me, February Term, 1883, on the pleadings and testimony, without a report by the master on the issues involved, which was not required by the order of reference. * *, *

The testimony taken by the master has reference principally to

the terms of the compromise and settlement between the plaintiff and defendant, S. D. Day, and is directly contradictory. The plaintiff, Richardson, testifies that the first agreement for compromise of his claim against estate of Elizabeth Day was such as stated by defendant, Day, but that Day subsequently refused to abide by this settlement, and the second compromise and settlement was entered into, which is set forth in the receipt of date December 7th, 1880. The testimony of Richardson seems to me to be corroborated by the witnesses, Huff and Wright.

After a careful consideration of the whole evidence in the case, I am satisfied that the parties made the agreement and compromise set forth in the receipt and assignment and that plaintiff did pay to the defendant, Day, the sum of $400 specified in the receipt, in satisfaction of his liability as surety for the deceased guardian, Mrs. Day, and received from him the assignment of his interest, and that he paid to Mrs. Mary Sheppard, late Jackson, the sum specified in the receipt given by her on August 24th, 1880.

It is, therefore, adjudged and decreed that the plaintiff is entitled to the relief prayed in his complaint, and to subject the real estate of Elizabeth Day, deceased, to the payment of the liability incurred by him as surety for said Elizabeth Day. It is further ordered and decreed, that the master of this court do proceed to sell the real estate of the said Elizabeth Day, for the repayment of the sums paid by plaintiff, on her said guardian bonds, with interest from the respective days of payment at public outcry, &c.    *    *    *    It is further ordered that, if the said S. D. Day, or the heirs of said Elizabeth Day, pay the said claim of the plaintiff, with interest and the costs, the master forbear to make the sale herein above ordered.

*Messrs. Perrin & Cothran,* for appellant.

There was no liability on the surety until his principal's default had been established. 13 *S. C.* 580. There is no evidence of default; on the contrary it is shown that the guardian invested the money of her wards in this land. Plaintiff's payments were therefore voluntary, and cannot be recovered—at least in this

form of action. By the assignment, plaintiff took only the ward's rights and interest, which were to call on the sureties for the guardian's default when established. Richardson is estopped from denying Day's title. 13 *S. C.* 370, 375. This land belonged to the wards. *Harp. Eq.* 239; 2 *McCord Ch.* 265; *Rich. Eq. Cas.* 172; 2 *Hill Ch.* 426; 1 *Strobh. Eq.* 112; 3 *Id.* 134. The wards could elect to take the money or the land. 11 *Rich. Eq.* 408.

*Mr. W. H. Parker,* contra.

Respondent's only defense was on questions of fact decided against him by the Circuit judge. He cannot now assert other and affirmative defenses. *Code,* § 171; *Pom. Rem.,* §§ 617, 690, 701, 706; 4 *S. C.* 48; 9 *Id.* 282; 12 *Id.* 8; 15 *Id.* 10; 16 *Id.* 255; *Greenl. Evid., Part IV.,* § 157. The answer admits title to have been in Mrs. Day; the subsequent application of the ward's money to this land did not create a resulting trust. 19 *S. C.* 126. But if purchased with their money it only gave the wards a lien on the land, if they so elected. *Perry Trusts,* §§ 128, 458; 1 *Rich. Eq.* 448. Having elected to take money, they cannot now claim the land. *Big. Estop.* 503. There has been accord and satisfaction. 13 *S. C.* 370. Also an assignment. The possession of S. D. Day was the possession of all the heirs of Mrs. Day until actual ouster.

February 23d, 1884. The opinion of the court was delivered by

MR. JUSTICE KERSHAW. This action was brought by the plaintiff to subject a tract of land, in the possession of the defendants, to the payment of an alleged debt of their ancestress, Elizabeth Day, deceased. The demand was stated in the complaint to have arisen out of the following facts, in effect : That Elizabeth Day had been the guardian of Mary Jackson, her granddaughter, and S. D. Day, her son, and received their estates; that T. S. Powers, John Day and plaintiff were sureties on the guardianship bond, of whom plaintiff alone survived; that she made no settlement with her wards, and died on or about

November 1st, 1874; that in 1879, Mary Sheppard, *nee* Jackson, one of said wards, came of age and instituted suit against the plaintiff, as surviving obligor on the guardianship bond, to recover the balance of her estate in the hands of her late guardian; that plaintiff effected a settlement with her for the sum of $260, which was paid August 24th, 1880, and a receipt given in full satisfaction of her said claim by the said Mary Sheppard; that S. D. Day was also about to commence suit against the plaintiff for the recovery of the balance due him by his late guardian, when, on December 7th, 1880, a compromise was made between him and the plaintiff for the sum of $400, which was also paid, and a receipt in writing given by S. D. Day to the plaintiff, acknowledging full satisfaction of plaintiff's liability on the guardianship bond, together with an assignment by S. D. Day of all his interest in the bond to the plaintiff. The complaint demanded judgment for the amounts so paid by plaintiff, with interest, and that the land described be subjected to the payment of the same.

B. F. Day and Rebecca Moore answered the complaint, denying that they were in possession of the land, and demanded, for that reason, that the action be dismissed as against them. Mary Sheppard did not answer, and S. D. Day alone resisted the demands of plaintiff. There was no personal property left by Elizabeth Day, and there has been no administration on her estate.

The answer of S. D. Day raised no issues upon any of the matters alleged in the complaint, except that he denied information as to the alleged payment to Mary Sheppard, and set up a defense in regard to the effect of the compromise made between him and the plaintiff, denying the allegations of the complaint in relation thereto. His answer states that the compromise of the indebtedness of the plaintiff was as follows: "The plaintiff was liable as surety on the bond of Mrs. E. Day, as guardian of the defendant, on which there was due the sum of $741.63, with interest from January 1st, 1872. This indebtedness the defendant agreed to compromise for the sum of $400, to be made up to him as follows: The plaintiff was to pay the said defendant $50 in cash, and the balance, $350, was the sum agreed upon

between the plaintiff and defendant as the value of the plaintiff's claims on said tract of land, in consideration of which the plaintiff agreed to release to the defendant the said tract of land from all the claims he had or might have by reason of his payment or surety on the guardianship bond of Mrs. E. Day. In consequence of said compromise, the said defendant went into possession of the said tract of land, and still claims the possession thereof; and the defendant further alleges, that he has never received from the plaintiff but $40 in money on said compromise."

Upon these issues the cause was heard and determined by the Circuit Court in favor of the plaintiff, who was adjudged entitled to the relief prayed, and the land was ordered to be sold for the payment of his demands. The defendants appealed from this decision, upon the grounds stated in the brief, as follows: " 1. Because his Honor erred in ordering the tract of land, containing forty acres, in the possession of S. D. Day, to be sold to refund the amount paid by plaintiff on his liability on the bonds of Mrs. Day, as guardian of S. D. Day and Mary Sheppard. 2. Because his Honor erred in not holding that the said tract of land was part of the estates of the said wards, and not subject to sale for Mrs. Day's debts. 3. Because his Honor should have dismissed the complaint, as the defendants were not in the possession of any descended estate from Mrs. Day."

The Circuit Court has determined the questions of fact raised by the pleadings in favor of the plaintiff. The decision is well sustained by the evidence, and will not be disturbed by this court. From the facts so determined, it follows that the plaintiff has a valid demand against the estate of Elizabeth Day for the sums of money paid him as surety in settlement of her liabilities as guardian.

It is claimed by appellants that no valid claim was established by the plaintiff, for the reason that there must have been an accounting first had before the payment by the surety of the alleged liability of the guardian could operate to charge the latter. There is no doubt that such is the general rule, and if the defendants here were only heirs-at-law, there might have been, under other circumstances, some ground for its application. But the liability of Elizabeth Day, discharged by the plaintiff,

was to Mary Shephard and S. D. Day, who united in themselves the character of both heirs-at-law and creditors of the estate. They, themselves, asserted against the plaintiff the very liability which they now demand should be established by an accounting, and accepted a settlement with the plaintiff upon that basis. They are estopped to deny the liability, and the other defendants have admitted it by their failure to deny the allegation of the complaint in regard thereto.

As for the liability of the land. Appellants insist that Elizabeth Day, their guardian, invested the funds of her wards in the purchase of the lands in question, taking titles of the same in her own name, and that a trust resulted to them, in consequence, by virtue of which they claim the land, not as heirs-at-law, but in their own right under this trust. This ground was not taken in the Circuit Court, and there is no foundation for it in the pleadings, and objection is made by the counsel for the respondents, that the questions so raised cannot now be considered. The authorities cited in support of the objection would seem to support it, but we prefer to dispose of the subject upon its merits. The evidence upon this point, as contained in the "Case," is as follows: "That Elizabeth Day executed her note on December 4th, 1860, to Walter S. Richardson, agent for James Richardson, for the sum of $1,278.75, for the purchase-money of the land in question, with T. S. Powers and John Day as sureties; that she took title to herself and lived on the land till her death in 1874; that she was appointed guardian of her wards, and gave bond February 28th, 1861; that among other things, W. S. Richardson testified that he knew that Mrs. Day had invested in the land, said forty-four acres, her wards' money; that S. D. Day and Mary Jackson lived with their mother and grandmother, on the land, till her death; that Mary Jackson, now Sheppard, continued to do so till her marriage in 1880, when she left, and that S. D. Day has, since the death of his mother, continued to live on the land, and is now in possession of it."

It will be seen that the purchase of the land was made by Mrs. Day, and the title vested in her before she became the guardian of defendants. This, therefore, is not a case of a trust

2B

resulting from the purchase of the land, and the taking of title in her own name, by one person, and the payment of the purchase-money by another. In cases of that kind, the payment or advance of the money before, or at the time of the purchase, is indispensable to the creation of the trust. "The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper money of the *cestui que trust* and the deed not taken in his name. The trust results from the original transaction, at the time it takes place, and at no other time, and it is founded on the actual payment of the money, and on no other grounds. It cannot be mingled with any subsequent dealings whatever." *Botsford* v. *Burr*, 2 *Johns. Ch.* 414; *Rogers* v. *Murray*, 3 *Paige* 390; *Ex parte Trenholm*, 19 *S. C.* 126.

Nevertheless, it appears that this land was paid for, in part at least, with money of the wards of Mrs. Day. Under such circumstances the *cestui que trust* is entitled to the money or the the land, at his option. *Lench* v. *Lench*, 10 *Ves.* 517; *Lewis* v. *Madocks*, 17 *Id.* 58. Says Mr. Story: "In cases of this sort the *cestui que trust* is not at all bound by the act of the other party. He has, therefore, an option to insist upon taking the property, or he may disclaim any title thereto, and proceed upon any other remedies to which he is entitled, either *in rem*, or *in personam*. The substituted land is only liable to his option. But he cannot insist upon opposite and repugnant rights." 2 *Eq. Jur.* 1262.

From the facts here, it appears that the defendants, Mary Sheppard and S. D. Day, elected to proceed against the surety on the guardian's bond, and have received from that source satisfaction of their claims. It is manifest that this exercise of their right of choice operates to confirm the title of Mrs. Day, and to divest it of the trust which they might otherwise have enforced against the land. Their possession, therefore, is as heirs-at-law and not under the alleged trust. This being the nature of their possession, they hold as tenants in common with their co-heirs, and the plea of B. F. Day and Rebecca Moore, denying that they are in possession, is negatived, for the possession of one tenant in common is the possession of all. *Jefcoat* v. *Knotts*,

13 *Rich.* 60. There would have been no propriety, therefore, in dismissing the complaint as to them, as claimed by the third ground of appeal.

We perceive, therefore, no error in the judgment of the Circuit Court. It having been established that the plaintiff had a valid demand against the estate of Mrs. Day for money paid by him as surety on the guardianship bond in discharge of her liability as guardian; and it also having been established that the land in question was vested in her, and descended to the defendants as heirs-at-law, the judgment of the Circuit Court could not have been otherwise.

It is ordered and adjudged that the appeal be dismissed; that the judgment of the Circuit Court be affirmed, and the case remanded to that court in order that the judgment of the same may be carried into effect.